

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Calvin C. Miner* | *Suite 400* | *DIRECT: 410-209-4860* |
| *Assistant United States Attorney* | *36 S. Charles Street* | *MAIN: 410-209-4800* |
| *Calvin.Miner@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-0717* |

November 5, 2025

The Honorable James K. Bredar
United States District Judge
101 W. Lombard Street
Baltimore, Maryland 21201

      Re:    <u>United States v. Linnard Wortham</u>, Criminal No. JKB-24-0109 & JKB-13-151
               (Violation of Supervised Release)

Dear Judge Bredar:

      I write in advance of the sentencing hearing, currently scheduled for November 19, 2025. As more fully explained below, the Government recommends a sentence of 140 months' imprisonment, which is at the low end of Linnard Wortham's agreed upon recommended sentencing guidelines range of 135 to 156 months. The Government also recommends a 22-month[1] consecutive sentence for Wortham's violation of supervised release in Case No. JKB-13-151. In total, the Government recommends a sentence of **162 months' imprisonment**.

## PROCEDURAL HISTORY

      A federal grand jury returned a second superseding indictment against Wortham and eight others for charges of conspiracy to distribute controlled substances, possession with intent to distribute controlled substances, and firearm offenses on July 25, 2024. ECF no. 79. On August 28, 2025, Wortham pleaded guilty to Counts One and Eight of the second superseding indictment that charged him with conspiracy to distribute controlled substances and possession with intent to distribute controlled substances. ECF no. 191.

## FACTUAL BACKGROUND

      The Government incorporates the facts in the Presentence Investigation Report ("PSR") and the statement of facts filed in support of the defendant's plea agreement.

      In 2023, multiple federal agencies ("HSI, DEA, and IRS") were investigating a Baltimore-based drug trafficking organization ("DTO") distributing large quantities of cocaine. The DTO

---

[1] This conviction is a Grade A violation and Wortham's Criminal History Category is V. Wortham's range of imprisonment for violating his Supervised Release is 46 – 57 months.

used multiple stash houses to store large quantities of drugs. One of the DTO's stash houses was an apartment ("stash location") in Baltimore, Maryland. To monitor the DTO's use of the stash location, agents installed a covert camera in the public common hallway floor, positioned to capture entry and exit from the stash location's front door. As agents monitored the camera over an extended period, they observed activity consistent with drug trafficking – a constant flow of people entering the apartment for a short duration and leaving the apartment with bags of suspected drugs or concealed objects inside their clothing consistent with the shape and size of kilogram packages of drugs.

On October 11, 2023, at 9:00 a.m., agents were surveilling the stash location via the convert camera. At 9:53 a.m., the DTO's leader opened the door, and an unknown male exited the stash location with a large duffle bag. Agents followed the unknown male as he placed the duffle bag into a Nissan sedan. The unknown male drove to Dolfield Avenue and parked next to a Volkswagen SUV that was driven by Linnard Wortham. The unknown male placed a duffle bag in the Volkswagen's trunk.

Wortham left the area as agents followed behind him. Prior to agents' attempt to conduct a traffic stop, Wortham abruptly stopped the Volkswagen on Oakford Avenue, bolted out of the Volkswagen, and fled on foot. After a brief pursuit, agents apprehended Wortham a short distance away from the scene. As agents pursued Wortham, a different group of investigators approached the Volkswagen parked in the middle of the street.

Agents opened the trunk of the Volkswagen and discovered the duffle bag in a stash location crammed with 19-kilogram packages of cocaine. A forensic analysis was conducted on the drugs and confirmed the packages were cocaine. Agents also recovered 4 cell phones from the Volkswagen.

Agents obtained a search warrant for Wortham's phones and discovered a text message exchange with the DTO's leader. Their text exchange – which occurred the morning of October 11, 2023 – coordinated the drug deal agents observed.

## GUIDELINES COMPUTATIONS

The Government agrees with the Guidelines calculation in the Presentence Investigation Report ("PSR"). Wortham's Guidelines are 262 to 327 months based on a final offense level of 34 and Criminal History Category VI. *See* PSR ¶¶ 30, 44, 96. The Government believes there are no applicable departures. The above Guidelines calculations are based on Wortham's status as a career offender. Wortham's Guidelines without the career offender status are 140 to 175 months based on an adjusted offense level of 29[2] and Criminal History Category V. *See* PSR ¶¶ 32, 43. Although the career offender Guidelines calculation is correct, the parties are seeking a sentence based on the Guidelines without the career offender enhancement.

---

[2] The base offense level is 32 USSG §2D1.1(a)(5). Three points are deducted pursuant to USSG § 3e1.1 (a) and (b), which would result in a final offense level of 29.

2

# FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

Wortham is before this Court for his second federal drug trafficking conviction. While on supervised release for that federal conviction, Wortham was arrested in this case for possessing 19 kilograms of cocaine. Considering the factors set forth in 18 U.S.C § 3553(a), the Government submits that a sentence of 162 months' imprisonment is the appropriate disposition of this case.

   a. **Nature and Circumstances of the Offense**.

Wortham participated in a large-scale drug trafficking conspiracy. Over 100 kilograms of cocaine was seized from Wortham and his co-conspirators during this drug investigation. The organization transported large quantities of cocaine from California to Maryland via commercial airlines and rental vehicles. Wortham was a customer of the drug organization's leader, Kobie Farmer. Investigators seized 19 kilograms of cocaine from Wortham.

The large quantities of drugs Wortham possessed was intended for widespread distribution and would cause significant harm to people and communities affected by drug addiction and related crimes. As most recognize, drug trafficking presents a danger to the community. *See United States v. Douglas*, No. CR DKC 20-0249-001, 2020 WL 6063483, at *2 (D. Md. Oct. 14, 2020) (holding that "drug trafficking itself presents a danger to the community."). The seriousness of Wortham's offense cannot be mitigated. His conduct requires a significant period of imprisonment to reflect the seriousness of his offense, and a 162-month sentence accomplishes that goal.

   a. **History and Characteristics of the Defendant**.

As reflected in the PSR, Wortham has a lengthy and serious criminal history. He has been convicted seven times since turning 18, ranging from a federal Racketeering Conspiracy and drug trafficking offenses to multiple state drug offenses and a firearm offense. Despite these prior convictions, he has continued to engage in criminal activity.

Wortham's first felony drug conviction was in 2009. According to the statement of probable cause, Wortham fled from law enforcement after they initiated a traffic stop on a vehicle that he was a passenger in. PSR ¶ 36. During Wortham's flight, law enforcement observed him toss a handgun. *Id*. Law enforcement seized the handgun Wortham discarded and seized drugs from the vehicle he fled from. *Id*. Similarly, in this case, law enforcement attempted to initiate a traffic stop on Wortham's vehicle, but he fled. Law enforcement seized drugs from Wortham's vehicle but did not recover a firearm. A few days after Wortham's arrest, Farmer, the co-conspirator who distributed the drugs to Wortham, discussed Wortham's possession of a firearm when fled from law enforcement over a recorded jail call with an inmate incarcerated in the Bureau of Prisons.

The recorded conversation is depicted below.

| INMATE | Kobie! |
|---|---|
| FARMER | Yoo. |
| INMATE | What's happening? |
| FARMER | It's one thing or another man, I'm telling you man. One thing or a motherfucking notha nigga. Boy I just got some tough news man. This shit is wicked out here. You don't know "Stew" from west Baltimore do you? |
| INMATE | Say who? |
| FARMER | Stew. |
| INMATE | Nah. |
| FARMER | Yeah, you probably don't know stew. But he's a good nigga. I think like, remember he had a meeting up Mondawmin some years ago and some niggas got knocked off? |
| INMATE | Yeah, on that shit with Mike? |
| FARMER | Yeah, I think he was there. But you know Stew a good nigga man. So we thought he got locked up with a blick[3]… Man they got nineteen of them things man. |
| FARMER | Why man |
| INMATE | You said nineteen of yo? |
| FARMER | Nineteen, nigga this shit is unfucking believable, yo. |
| INMATE | That's crazy yo. |
| FARMER | Nineteen yo. |
| INMATE | He supposed to be on a high-speed chase through the city. |

---

[3] "Blick" is a coded term to describe a firearm."

4

| FARMER | And his car was locked. Because the people said they had seen them people have to use something to get up in that bitch, and he breaking. And he had a blick on him. He got the blick off him. They must not got the blick because he ain't charged with the blick. But, I don't know man. |
|---|---|

Although investigators did not recover a firearm from Wortham in this case, it appears he likely had one.  His conduct in this case mirrored his first felony drug conviction, but in this case, his drug trafficking has escalated significantly.

Turning to Wortham's federal conviction, he was a member of a Racketeering Conspiracy where the Black Guerilla Family ("BGF") trafficked drugs and contraband inside a Baltimore City correctional facility.  PSR ¶ 40.  He was BGF's source of supply for drugs that were smuggled inside the correctional facility.  *Id*.  In the case before the Court, Wortham was a member of a bi-coastal drug trafficking organization distributing large quantities of drugs in the Baltimore region.  Again, Wortham's conduct in this case mirrors a prior conviction.

That conviction led to Wortham's federal supervision, which he violated with this new offense.  Prior to this offense, Wortham did not have any violations or infractions during his supervision.  While that shows he can abide by court orders, it also provides insight that he can engage in criminal activity while under court supervision.  To address Wortham's repeated, undeterred, criminal conduct, a 162-month sentence is appropriate based on his criminal history.

b. **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant**.

When determining Wortham's sentence, the Court should consider the seriousness of his conduct and the need to promote respect for the law.  As set forth in the Factual Background, Wortham possessed a significant quantity of drugs.  None of the actions underlying his crimes are the result of an accident or mistake.  Instead, his actions appear motivated by greed and the easy money associated with the drug trade.  Wortham made a conscious decision to, once again, illegally possess, and conspire to distribute narcotics, putting the safety of the public at risk.

Considering Wortham's repeated return to a deadly trade, drug trafficking, the sentence imposed should also protect the public from Wortham.  Drug trafficking is the root cause of violence on the streets of Baltimore and surrounding metropolitan areas.  There are daily reminders in the news regarding shootings, murders, home invasions, or other similar violence related to drug trafficking.  The sheer quantity of drugs Wortham possessed showed he was heavily involved in a dangerous trade.

      The sentence should reflect Wortham's culpability relative to his co-defendants. One co-defendant has been sentenced, Deandrae Stull. He was sentenced to 120 months' incarceration. Stull was a drug courier who imported cocaine from California to Maryland via commercial airlines and was stopped with 15 kilograms of cocaine. Stull has four criminal convictions: firearm possession as a minor, misdemeanor assault, and two drug convictions. In contrast, Wortham has seven convictions: a federal drug conviction, five state drug convictions, and a felony firearm conviction. Wortham possessed 19 kilograms of cocaine while under federal supervision. Wortham's conduct in this case and individual sentencing factors warrants a significantly higher sentence than Stull's sentence of 120 months.

      Lastly, a sentence that reflects the seriousness of this crime and Wortham's history of recidivism is important for specific deterrence. Despite being sentence in federal court to 120 months' imprisonment in 2014 for trafficking drugs into a correctional facility, Wortham is before this Court again for another serious drug trafficking offense. The sentence imposed should specifically deter Wortham from engaging in future criminal conduct. Additionally, the sentence imposed should provide general deterrence. A sentence of 162 months' imprisonment will send a message to the community that conspiring to distribute drugs will not be tolerated and will result in federal prosecution and lengthy sentences in the Bureau of Prisons.

*    *    *

      The Government believes 162 months' imprisonment is an appropriate sentence that is sufficient but not greater than necessary to achieve the required purposes of sentencing.

      Thank you for your attention to this matter.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

      /s/ Calvin C. Miner
Calvin C. Miner
Assistant United States Attorney

cc:    Christopher Purpura (via CM/ECF)
       Nicole Wonneman, U.S. Probation Officer (via e-mail)